CRUCIANO FANTAUZZI, EMILIA FANTAUZZI and her husband PAUL WILLIAM MANNES, EUGENIA FANTAUZZI and her husband RENAUD VÍCTOR GERARD, JUAN FANTAUZZI, JULIO FANTAUZZI, HEIRS OF SOFÍA FANTAUZZI consisting of her husband ALBERT MARIANI, LUISA G. FANTAUZZI and ANTONIO M. FANTAUZZI, Plaintiffs and Appellants, v. J. W. BONNER by his successor JUAN G. GALLARDO, Treasurer of Porto Rico, Defendant and Appellee.

Nos. 3569 to 3576. Argued April 22, 1925.—Decided July 13, 1925.

1. TAXATION—DELEGATED AUTHORITY.—Act No. 80 of 1919 may be considered as an amendment to or modification of the federal law governing the matter and was passed by the Legislature of Porto Rico in the exercise of the

authority conferred upon it by Congress in the Acts of October 3, 1917, and February 24, 1919.

2. Id.—Income Tax.—The fact that an income may be exempt from taxation under a former law does not prevent the Legislature from imposing a tax on the said income received prior to the enactment of the new law.

3. Id.—Id.—Partnership—Individual Income.—After the profits of a partnership have been distributed among the members each allotment is an individual income subject to taxation according to law.

First District Court of San Juan, Charles E. Foote, J. Judgment on demurrers dismissing the complaints without costs. *Affirmed.*

*Tomás Bernardini* for the appellants. The *Attorney General, R. H. Todd, Jr., J. A. López Acosta* and *C. Llauger Díaz* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

All of these cases were prosecuted separately in the district court, but were disposed of by the trial judge in a single opinion, and although the appeals were filed separately in this Supreme Court, they were all heard at the same time. The questions of fact and of law involved are identical in all and for that reason only one opinion will be necessary.

It is alleged in the complaints that Successors of C. & J. Fantauzzi, an agricultural and industrial partnership of Arroyo organized in accordance with the laws of Porto Rico, of which each of the plaintiffs is a member, submitted according to law its declaration of profits received in the year 1918 for the purpose of determining its income tax, and paid that tax as assessed by the Treasurer of Porto Rico.

That during the year 1918 the plaintiffs had no incomes from sources in Porto Rico for which they were required to make individual returns, and their only incomes were those that they had received as members of the said partnership.

That on December 10, 1919, the Treasurer considered as individual incomes of the plaintiffs the profits belonging to each of them as a member of Successors of C. & J. Fan-

tauzzi and issued a schedule for the collection of the corresponding tax.

That upon being notified of this the plaintiffs petitioned the Treasurer to reconsider his decision and the petition was denied. It seems proper to transcribe the Treasurer's decision, which is identical in all of the cases. It reads as follows:

"San Juan, P. R., February 1, 1920.—Mr. Cruciano Fantauzzi, c/o José Manatou Fantauzzi, Arroyo, P. R.—Sir: Your petition for reconsideration with respect to the net income and the tax assessed in schedule No. 9 for the calendar year ended December 31, 1918, on the ground that 'Successors of C. & J. Fantauzzi having declared in its schedule the income corresponding to the person referred to in this petition and the corresponding tax being subject to payment by the said partnership, it is not proper, in our opinion, to collect this tax from the members of this partnership, because this would operate as a double tax which, in our opinion, is not permitted by the law, for which reason no individual declaration has been made,' is hereby denied because section 5 of the Act provides that in the case of an individual the term 'net income' means the income defined in section 6, less the deductions allowed by section 8.—Section 6 of the Income Tax Law defines gross income as the gains, profits, benefits, etc., of any kind derived from any source whatever.—Within the terms of this definition are included as a gross income the profits derived from civil partnerships.—Section 8 indicates the deductions admissible from the gross income for the purpose of computing the net income, and among those deductions there is none applicable to the income derived from civil partnerships.—For these reasons the income from civil partnerships should be subject to the normal and additional tax in the same manner and form as any other income except for the positive provision of section 11 of the Act that for the purpose of computing the normal tax only it shall be admissible to deduct from the income the amount received as dividend from a corporation, or as profits from a partnership subject to taxation on its net income. This section of the Act specifies clearly and positively that income from civil partnerships may be deducted for the purpose of computing the normal tax only; that is, it may not be deducted for the purpose of computing the additional tax, and is therefore, subject to taxation on its amount in excess of $5,000 at the progressive rates fixed by sec-

tion 4 of the Act.—This decision will be final unless you appeal to the Board of Review and Equalization within fifteen days from this date, for which purpose you should use the enclosed blank.—Respectfully, (Signed) E. M. Vasallo, Acting Treasurer of Porto Rico.''

That the plaintiffs appealed to the Board of Review and Equalization and the Board affirmed the decision of the Treasurer, whereupon the plaintiffs paid the taxes under, protest and brought the actions which we are now considering.

After narrating the foregoing facts in much more extended form the plaintiffs allege that the taxes imposed upon and paid by them under protest are erroneous, unjust and illegal, for the following reasons:

''(a) Because the said tax has been determined and computed by the Treasurer of Porto Rico under the income tax laws passed by the Legislative Assembly of Porto Rico, especially Act No. 80 of the said Legislative Assembly of June 26, 1919, entitled 'An Act to provide revenues for The People of Porto Rico through the levying of certain income taxes, to repeal the Act of Congress of the United States of September 8, 1916, amended October 3, 1917, to repeal section 1 of Act No. 8 of the Legislature of Porto Rico, approved December 12, 1918, to appropriate the sum of $600,800 for the carrying out of the provisions of sections 2, 4 and 5 of the aforesaid Act No. 8, and for other purposes.' This Act, as well as Act No. 59 of December 4, 1917, to provide additional revenues for The People of Porto Rico through the levying of certain additional income taxes, and for other purposes, Act No. 8 of December 12, 1918, extending the effects of the act cited to the fiscal year 1918–19, and all other laws on the matter enacted by the Legislative Assembly of Porto Rico are unconstitutional because the Legislative Assembly of Porto Rico, in accordance with the provisions of the Organic Act, has no power to enact income tax laws; because section 5 of the Act of Congress of October 3, 1917, entitled 'An Act to provide revenue to defray war expenses,' which is now section 3366 of the Revised Statutes of the United States, did not grant such power to the Legislature of Porto Rico; and in case it should be so understood, Congress could not thereby delegate the exclusive powers given to it by the federation of States, wherefore the said

income tax laws invoked by the Treasurer of Porto Rico are not binding on your petitioner or on any other taxpayer in Porto Rico;

"(b) Because even in case the said income tax laws enacted by the Legislative Assembly of Porto Rico should have any force and effect, they do not authorize the assessment and computation of the tax here complained of, nor bind your petitioner to pay the said tax as member of a civil partnership, either as an individual or as an additional tax, and your petitioner is exempt from the payment of said tax under the provisions of the law applicable to this particular case; that is, Act No. 59 entitled 'An Act to provide additional revenues for The People of Porto Rico' passed by the Legislative Assembly of Porto Rico and approved on December 4, 1917, as extended to the fiscal year 1918–19 by Act No. 8 of December 12, 1918, and repealed by Act No. 80 of June 26, 1919;

"(c) Because the income on which the tax here complained of has been imposed is not an income really received by your petitioner, but was obtained in accordance with the balances of the partnership of which he is a member and accumulated subject to the outcome of the business until the liquidation of the said Successors of C. & J. Fantauzzi, and because even if it were an income actually received it accrued in the year 1918 and can not be computed, as the Treasurer of Porto Rico did, in accordance with Act No. 80 of June 26, 1918, which went into effect at that time."

For the Treasurer the Attorney General of Porto Rico demurred on the ground that the complaints did not state facts sufficient to constitute a cause of action. The demurrer was heard and sustained, whereupon judgments were rendered in all of these cases against the plaintiffs and they took the present appeals.

The briefs of the appellants contain a separate assignment of seven errors which are not argued separately. In the part of the briefs entitled "Argument" the appellants follow the order of the grounds of the complaint which we have transcribed and upon which the plaintiffs contended that the tax collected was erroneous, unjust and illegal. In this opinion we shall follow the same order.

[1] The appellants contend that the tax is illegal because "the laws enacted by the Legislative Assembly of

Porto Rico imposing income taxes, especially Act No. 80 of June 26, 1919, . . . are unconstitutional because the Legislative Assembly . . . has no power to enact income tax laws . . ."

In our opinion the appellants are mistaken. In point of fact the only law attacked by them is Act No. 80 of June 26, 1919 (p. 612), to be in force until June 30, 1921. Its title, in so far as pertinent, is as follows:

"An Act to provide revenues for The People of Porto Rico through the levying of certain income taxes, to repeal the Act of Congress of the United States of September 8, 1916, amended October 3, 1917; to repeal section 1 of Act No. 8 of the Legislature of Porto Rico, approved December 12, 1918; to appropriate . . ."

Section 77 thereof reads as follows:

"That pursuant to the provisions of section 5 of the Federal Act of October 3, 1917, granting power to the Legislature of Porto Rico to amend, alter, modify, or repeal the income-tax laws in force in Porto Rico, through proper legislation, there is hereby repealed in Porto Rico the Federal Act of September 8, 1916, as amended October 3, 1917, except that the same shall continue in force with regard to the levying and collection of all taxes accrued thereunder and for the levying and collection of all fines heretofore imposed or which it may be necessary to impose in connection with said taxes; *Provided,* That for the calendar year 1918 no income tax shall be collected which is different from that established by this Act."

The Act of Congress to which the Legislature refers is the War Income Tax Law, section 5 of which reads as follows:

"That the provisions of this title shall not extend to Porto Rico or the Philippine Islands, and the Porto Rican or Philippine Legislature shall have power by due enactment to amend, alter, modify, or repeal the income tax laws in force in Porto Rico or the Philippine Islands, respectively." (40 U. S. Stat. at Large, 302.)

Besides, on February 24, 1919, Congress passed the Act

to provide revenue and for other purposes whose section 261 reads as follows:

"That in Porto Rico and the Philippine Islands the income tax shall be levied, assessed, collected, and paid in accordance with the provisions of the Revenue Act of 1916 as amended.

"Returns shall be made and taxes shall be paid under Title I of such Act in Porto Rico or the Philippine Islands, as the case may be, by (1) every individual who is a citizen or resident of Porto Rico or the Philippine Islands or derives income from sources therein, and (2) every corporation created or organized in Porto Rico or the Philippine Islands or deriving income from sources therein. An individual who is neither a citizen nor a resident of Porto Rico or the Philippine Islands but derives income from sources therein, shall be taxed in Porto Rico or the Philippine Islands as a non-resident alien individual, and a corporation created or organized outside Porto Rico or the Philippine Islands and deriving income from sources therein shall be taxed in Porto Rico or the Philippine Islands as a foreign corporation. For the purposes of section 216 and of paragraph (6) of subdivision (a) of section 234 a tax imposed in Porto Rico or the Philippine Islands upon the net income of a corporation shall not be deemed to be a tax under this title.

"The Porto Rican or Philippine Legislature shall have power by due enactment to amend, alter, modify, or repeal the income tax laws in force in Porto Rico or the Philippine Islands, respectively." (40 U. S. Stat. at Large, 1087.)

There is no doubt of the power of Congress to act as it did with regard to Porto Rico. Its power is given clearly by the Constitution and its Amendments and by the Treaty of Paris. We shall not follow the parties in their argument on this point. But the appellants maintain that even taking as a basis the federal laws cited, the Legislature of Porto Rico was without authority to pass Act No. 80 of 1919 (p. 612), which is an income tax law, for it had power only to amend, alter, modify or repeal the federal law on the matter and not to enact a new law.

The appellee replies that independently of the special laws cited section 37 of the Jones Act (March 2, 1917, Fed.

Stats. Ann. 1918) in prescribing that "the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable, . . ." conferred upon the Legislature of Porto Rico the necessary power to enact income tax laws. In support of his contention the appellee cites the case of *W. C. Peacock & Co.* v. *Pratt*, 121 Fed. 772 (58 C.C.A. 48), wherein the Circuit Court of Appeals for the Ninth Circuit, in construing a similar provision of the Organic Act of Hawaii, said:

"The only restriction of the powers of the territorial Legislature contained in the organic act is the provision that the 'legislative power of the territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable.' There is no express limitation of power in the matter of taxation. The section so quoted is identical with that which has usually been inserted in the organic acts creating territorial governments. It provides, in effect, that the territorial Legislature may not invade the domain of Congress as to subjects of legislation; but, aside from that, it concedes to it all the powers of a legislature of the states. Clinton v. Englebrecht, 13 Wall. 434, 20 L. Ed. 659; Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654; Cope v. Cope, 137 U. S. 682, 11 Sup. Ct. 222, 34 L. Ed. 832. In Clinton v. Englebrecht it was said:

" 'The theory upon which the various governments for portions of the territory of the United States have been organized has ever been that of leaving to the inhabitants all the powers of self-government consistent with the supremacy and supervision of national authority, and with certain fundamental principles established by Congress.'

"The provision that the legislative power shall extend to 'all rightful subjects of legislation' includes, therefore, full and comprehensive power to legislate in the matter of taxation." (p. 775).

The appellee also replies that section 3 of the Jones Act does not prevent construction of section 37 as conferring upon the Legislature all necessary authority to enact income tax laws, but on the contrary confers upon the Legislature express authority therefor, inasmuch as income tax has been considered by the court as an excise, therefore

falling within the scope of internal revenue. He cites the case of *Hattiesburg Grocery Co.* v. *Robertson,* 88 So. 4, in which it was held that an income tax "in the last analysis is simply a portion cut from the income and appropriated by the state as its share thereof, and, while a tax on income includes some of the elements both of a tax on property and of a tax on persons, it can not be classified as strictly a tax on either, for it is generically and necessarily an excise, . . ."

In our opinion it is not necessary to discuss and decide the possible scope of sections 3 and 37 of our Organic Act. We are of the opinion that if some measure of power was lacking it was conferred upon the Legislature by Congress by the special laws cited and that the Legislature of Porto Rico did not exceed its authority in passing Act No. 80 of 1919 (p. 612), which in itself is not a new law. It repealed the Act of Congress apparently to make the situation perfectly clear, but put into effect provisions which substitute those of Congress. The income tax laws of Porto Rico may be considered as amendments or modifications of the federal law.

[2] In arguing in their brief the second question involved the appellants say:

"Assuming for the sake of argument that the income tax laws passed by the Legislative Assembly of Porto Rico have force and effect because enacted with full authority, we contend that in that case the tax imposed upon and collected from the appellant is unjust and unlawful as not being authorized by the law applicable."

Then they analyze Act No. 59 of 1917 and Act No. 8 of 1918 and contend that they are the only statutes applicable to the case, inasmuch as the income of the plaintiffs accrued during the fiscal year 1917–18. And inasmuch as in accordance with section 4 of Act No. 59 of 1917 every partner of a civil association, among others, has the right to deduct from his individual schedule the profits received as such partner, the plaintiffs insist that it would be inconsistent

with the actions of the Legislature to apply to the plaintiff's case, as the Treasurer did, the provision of section 2 of Act No. 80 of 1919 (p. 614) which reads as follows:

". . . The first taxable year for the purposes of this Act, shall be the calendar year ending the thirty-first day of December, nineteen hundred and eighteen, or any accounting period of twelve months ending during the calendar year nineteen hundred and eighteen."

The appellants twice recognize in their briefs the authority of the Legislature to levy taxes on incomes accruing prior to the passage of the Act, but insist that here this was exceeded because the Legislature had exempted from taxation the income which the Treasurer considered taxable.

In the case of *Brushaber* v. *Union Pacific Railroad Co.,* 240 U. S. 1, 20 (60 L. ed. 493), the Supreme Court of the United States, by Chief Justice White, expressed itself as follows:

"The statute was enacted October 3, 1913, and provided for a general yearly income tax from December to December of each year. Exceptionally, however, it fixed a first period embracing only the time from March 1, to December 31, 1913, and this limited retroactivity is assailed as repugnant to the due process clause of the Fifth Amendment and as inconsistent with the Sixteenth Amendment itself. But the date of the retroactivity did not extend beyond the time when the Amendment was operative, and there can be no dispute that there was power by virtue of the Amendment during that period to levy the tax, without apportionment, and so far as the limitations of the Constitution in other respects are concerned, the contention is not open, since in *Stockdale* v. *Insurance Companies,* 20 Wall. 323, 331, in sustaining a provision in a prior income tax law which was assailed because of its retroactive character, it was said:

" 'The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted; much less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed. The joint resolution of July 4th, 1864, imposed a tax of five per

cent upon all income of the previous year, although one tax on it had already been paid, and no one doubted the validity of the tax or attempted to resist it.' ''

The fact that the income was expressly exempted from taxation by the previous law, if such was the case, does not impede the Legislature from taking action. As a matter of fact all income upon which a tax has not been expressly imposed is exempt from taxation. The two cases are equal in the last analysis.

[3] The appellants present the third question as follows:

"In paragraph C of count XVII of the complaint your petitioner alleges that the income upon which the tax here involved was imposed was not an income actually received by your petitioner, but accrued in accordance with the balances of the partnership of which he is a member and accumulated subject to the final outcome of the business upon the liquidation of the said Successors of C. & J. Fantauzzi.''

The complaints in these cases are peculiar. They do not present a simple and concise statement of the facts, but contain repetitions, variations and argument. From them we have transcribed literally the grounds on which the plaintiffs allege that they are not bound to pay the said tax. Although the alternative form used and the suggestion made that the income was accumulated subject to the results of the partnership business produce some confusion, it is evident that the partnership struck a balance and to each partner was assigned the corresponding sum, which became the individual property of the partner who could withdraw it or leave it in the business. Such being the case, the question is disposed of by applying the jurisprudence laid down by this court in the case of *Serrallés v. Gallardo*, 32 P.R.R. 649.

'' ''The profit accruing from one's share in the business conducted by a partnership is a part of his income. The net earnings of the partnership constitute income of the firm so long as they remain in the possession or to the credit of the firm as such. But

when a proportionate part is drawn out and paid over to an individual partner it becomes and constitutes a part of his private income.' Black, Income and other Federal Taxes (1920), par. 60, page 72." (Cited in *Serrallés* v. *Gallardo, supra*, 655).

For all of the foregoing reasons we are of the opinion that the judgments appealed from should be affirmed.