CRUCIANO FANTAUZZI; EMILIA FANTAUZZI, asistida de su esposo PAUL WILLIAM MANNES; EUGENIA FANTAUZZI, asistida de su esposo RENAUD VICTOR GERARD; JUAN FANTAUZZI; JULIO FANTAUZZI; SUCN. DE SOFÍA FANTAUZZI, compuesta por su cónyuge viudo ALBERT MARIANI; LUISA G. VIUDA DE FANTAUZZI y ANTONIO M. FANTAUZZI, demandantes y apelantes, *v.* J. W. BONNER, por su Sucesor JUAN G. GALLARDO, Tesorero de Puerto Rico, demandado y apelado.

Nos. 3569 al 3576.—*Vistos:* Abril 22, 1925. *Resueltos:* Julio 13, 1925.

1. CONTRIBUCIONES—NATURALEZA Y EXTENSIÓN DEL DERECHO EN GENERAL—PODER DE LAS LEGISLATURAS TERRITORIALES.—La Ley No. 80 de 1919 (p. 613) puede considerarse como una enmienda o modificación de la ley federal sobre la materia, decretada por la Legislatura de Puerto Rico en ejercicio de las atribuciones que le confiriera el Congreso por las Leyes de Octubre 3 de 1917 y 24 de Febrero de 1919.

2. CONTRIBUCIONES—NATURALEZA Y EXTENSIÓN DEL DERECHO EN GENERAL—PODER DE LAS LEGISLATURAS TERRITORIALES.—El que un ingreso esté exento de contribución de modo expreso por una ley anterior, no impide a la Legislatura imponer una contribución sobre dicho ingreso devengado en un período anterior a la aprobación de la nueva ley.

3. CONTRIBUCIONES—RESPONSABILIDAD DE LAS PERSONAS Y LAS PROPIEDADES—PERSONAS PARTICULARES Y PROPIEDADES EN GENERAL—INGRESOS PROCEDENTES DE BENEFICIOS EN SOCIEDADES.—Adjudicados y repartidos entre los socios los beneficios habidos en una sociedad, la parte así adjudicada y repartida es y constituye un ingreso individual del socio y está sujeto a tributación de acuerdo con la ley.

SENTENCIAS de *Charles E. Foote,* J. (Primer Distrito, San Juan), declarando con lugar excepciones previas de falta de causa de acción y desestimando en consecuencia las demandas, sin costas. *Confirmadas.*

*Tomás Bernardini,* abogado de los apelantes; *Hon. Attorney General, R. H. Todd, Jr., J. A. López Acosta* y *C. Llauger Díaz,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Aunque todos estos casos se tramitaron separadamente en la corte de distrito, se consideraron por el juez sentenciador en una sola opinión, y aunque los recursos se radicaron también separadamente en esta Corte Suprema, la vista

de los mismos se celebró en un solo acto. Las cuestiones de hecho y de ley envueltas son idénticas en todos. Siendo ello así, sólo será necesario emitir una opinión.

Se alega en las demandas que la sociedad civil, domiciliada en Arroyo, P. R., *Sucesores de C. y J. Fantauzzi,* que es una compañía agrícola e industrial constituída con arreglo a las leyes de esta Isla y de la cual cada uno de los demandantes es socio, rindió, de acuerdo con la ley, su declaración sobre beneficios obtenidos en el año 1918, a los efectos de determinar la contribución sobre ingresos, que pagó tal como fué fijada por el Tesorero de Puerto Rico.

Que los demandantes, durante el dicho año 1918 no tuvieron de fuentes radicadas en Puerto Rico ningún ingreso por el cual estuvieran obligados a formular planilla individual y sólo devengaron los ingresos que hubieran podido percibir de la expresada sociedad, como socios de la misma.

Que el 10 de diciembre de 1919 el Tesorero consideró como ingresos individuales de cada uno de los demandantes la parte que les correspondía como socios de Sucesores de C. y J. Fantauzzi y formuló una planilla cobrando la contribución correspondiente.

Que notificados los demandantes pidieron al Tesorero que reconsiderara su resolución y éste se negó a ello. Parece conveniente transcribir la resolución del Tesorero en el primero de los casos. Es idéntica en los demás. Dice así:

"San Juan, P. R.—Febrero 1, 1920.—Sr. Cruciano Fantauzzi, c/o José Mananton Fantauzzi, Arroyo, P. R.—Señor: Como resolución a la solicitud de reconsideración respecto al ingreso neto y la contribución impuesta a la planilla No. 9, por el año natural terminado en 31 de diciembre de 1918, fundada en que: 'habiendo la sociedad Sucs. C. y J. Fantauzzi declarado en su planilla el ingreso correspondiente a la persona a que se refiere esta alzada y estando para ser pagada por dicha sociedad la contribución correspondiente, no procede a nuestro juicio, cobrar esa contribución a los miembros de esta sociedad civil, porque entonces estaríamos en el caso de una doble contribución, cosa que a nuestro juicio no permite la ley, en el caso que nos ocupa, motivo por el cual no se ha hecho declaración

individual,' por la presente se le notifica que ha sido declarada sin lugar porque la sección 5 de la ley dispone que en el caso de un individuo, el término 'ingreso neto' significa el ingreso definido en la sección 6, menos las deducciones prescritas en la sección 8.—La sección 6 de la Ley de Ingresos define el ingreso bruto como las ganancias, beneficios, utilidades, etc., cualquiera que sea su índole o procedencia.—Dentro de los términos de esta definición están incluídos como beneficios los procedentes de sociedades civiles cómo uno de los ingresos brutos.—La sección 8 indica las deducciones admisibles del ingreso bruto, a los fines de computar el ingreso neto, y entre dichas deducciones no existe ninguno aplicable a los ingresos derivados de sociedades civiles.—En virtud de lo expuesto, el ingreso procedente de sociedades civiles debería estar sujeto a contribución normal y adicional en la misma manera y en igual forma que cualquier otro ingreso, a no ser por la disposición terminante contenida en la sección 11 de la ley, que indica que, para computar la contribución normal solamente, se permitirá deducir del ingreso el importe recibido como dividendo de una corporación, o como beneficio de una sociedad que está sujeta a contribución sobre su ingreso neto.   Esta sección de la ley especifica clara y terminantemente que el ingreso procedente de sociedades civiles, será deducible para los fines de computar la contribución normal solamente, es decir, no será deducible para los fines de computar la contribución adicional, quedando, por lo tanto, sujeto a tributación sobre el exceso de $5,000.00 a los tipos graduados que prescribe la sección 4 de la repetida ley.—Esta resolución será firme, a menos que dentro de quince días a contar desde la fecha de la presente, recurra usted en alzada ante la Junta de Revisión e Igualamiento, para lo cual deberá usar el modelo incluso.—Atentamente, (f) E. M. Vasallo.—Tesorero Interino de P. R.''

Que los demandantes acudieron en alzada a la Junta de Revisión e Igualamiento y la Junta confirmó la resolución del Tesorero, pagando los demandantes la contribución bajo protesta e iniciando los pleitos que estamos considerando.

Después de la narración de los anteriores hechos en forma mucho más extensa, alegan los demandantes que la contribución que se les impuso y que pagaron bajo protesta es errónea, injusta e ilegal:

''(a) Porque dicha contribución ha sido determinada y compu-

tada por el Sr. Tesorero de Puerto Rico amparándose para ello en las leyes votadas por la Asamblea Legislativa de Puerto Rico imponiendo contribuciones sobre ingresos, especialmente en la ley No. 80 aprobada por dicha Asamblea Legislativa en 26 de junio de 1919, titulada 'Ley para proveer de rentas a El Pueblo de Puerto Rico mediante la imposición de determinadas contribuciones sobre ingresos, para derogar la ley del Congreso de Estados Unidos de septiembre 8 de 1916, enmendada en octubre 3, 1917, para derogar la sección 1ª de la Ley No. 8 de la Asamblea Legislativa de Puerto Rico, aprobada en 12 de diciembre de 1918, para asignar la suma de $600,800.00 para llevar a efecto las disposiciones de las secciones 2, 4 y 5 de la Ley No. 8 antes citada, y para otros fines,' y dicha ley, así como la No. 59 aprobada en 4 de diciembre de 1917 para proveer de rentas adicionales para el Pueblo de Puerto Rico mediante la imposición de determinadas contribuciones adicionales sobre ingresos y para otros fines, la ley No. 8 de 12 de diciembre de 1918 extendiendo los efectos de la antes citada ley al año económico de 1918–19, y las demás leyes sobre la materia dictadas por la Asamblea Legislativa de Puerto Rico, son anticonstitucionales, porque la Asamblea Legislativa de Puerto Rico de acuerdo con las provisiones de su Carta Orgánica, no tiene facultades para decretar leyes de Income Tax; porque la ley del Congreso de fecha 3 de octubre de 1917, titulada 'para proveer de rentas por motivos de Guerra' en su sección 5ª, que forma hoy la sección 3366 de los Estatutos Revisados de los Estados Unidos, no concedió a la Legislatura de Puerto Rico tal facultad; y en el caso de que así se entendiera, no puede hacer por ella el Congreso una delegación de sus facultades exclusivas concedídasle por la sociedad de Estados, en cuya virtud las referidas leyes de Income Tax invocadas por el Sr. Tesorero de Puerto Rico no obligan a vuestro peticionario ni a ningún contribuyente de Puerto Rico;

"(*b*) Porque aún en el caso de que las referidas leyes de Income Tax votadas por la Asamblea Legislativa de Puerto Rico tuvieran fuerza y valor alguno, ellas no autorizan la determinación y computación de la contribución objeto de esta querella, ni obligan a vuestro peticionario al pago de dicha contribución como miembro de una sociedad civil, ni como individual ni como adicional, estando vuestro peticionario exento del pago de dicha contribución bajo las provisiones de la ley aplicable al caso de esta contribución, o sea la No. 59 titulada 'Ley para proveer de rentas adicionales para el Pueblo de Puerto Rico' decretada por la Asamblea Legislativa de Puerto

Rico y aprobada en 4 de diciembre de 1917, tal como fué extendida para regir durante el año económico de 1918 a 1919, por la Ley No. 8 de 12 de diciembre de 1918, y derogada por la ley No. 80 aprobada en 26 de junio de 1919;

"(c) Porque los ingresos que han servido de base para la imposición de la contribución que es objeto de esta querella, no son ingresos realmente percibidos por vuestro peticionario, sino devengados de acuerdo con los balances de la entidad de que es socio, y acumulados a las resultas de la gestión social hasta la liquidación de la susodicha sociedad Sucs. C. y J. Fantauzzi, y porque aun cuando fueran ingresos realmente percibidos, éstos fueron devengados durante el año de 1918 y no pueden computarse y determinarse, como los determinó el Sr. Tesorero de P. R., de acuerdo con la ley No. 80, aprobada en 26 de junio de 1919, en cuya época entró en vigor."

El Tesorero, por medio del Fiscal General de Puerto Rico, alegó como excepción previa que las demandas no aducían hechos suficientes para determinar una causa de acción. La excepción fué discutida y declarada con lugar, dictándose sentencia en todos los casos en contra de los demandantes, que interpusieron entonces los presentes recursos de apelación.

Los alegatos de los apelantes contienen una asignación separada de siete errores, que luego no se discute separadamente. En la parte de los alegatos titulada "argumentación" se sigue el orden de los motivos expresados en la demanda, que dejamos copiados textualmente, a virtud de los cuales los demandantes sostuvieron que la contribución que se les cobraba era errónea, injusta e ilegal. En nuestro estudio seguiremos igual orden.

[1] Sostienen los apelantes que la contribución es ilegal porque "las leyes decretadas por la Asamblea Legislativa de P. R. imponiendo contribuciones sobre ingresos, especialmente la ley No. 80 de 26 de junio de 1919 . . . . son inconstitucionales, porque dicha Asamblea . . . . no tiene facultades para decretar leyes de 'income tax' . . . ."

No tienen razón a nuestro juicio, los apelantes. En realidad de verdad la única ley impugnada por ellos es la No.

80 de 1919 (p. 613), aprobada el 26 de junio de 1919 para
regir hasta el 30 de junio de 1921. Su título, en lo perti-
nente, es como sigue:

"Para proveer rentas para el Pueblo de Puerto Rico mediante
la imposición de determinadas contribuciones sobre ingresos, para
derogar la ley del Congreso de los Estados Unidos de septiembre 8,
1916, enmendada en octubre 3 de 1917, para derogar la sección 1
de la ley No. 8 de la Asamblea Legislativa de Puerto Rico, aprobada
el 12 de diciembre de 1918, para asignar. . . ."

Y su sección 77, dice:

"De acuerdo con lo que dispone la Sección 5 de la Ley Federal
de octubre 3, 1917, concediendo facultades a la Asamblea Legisla-
tiva de Puerto Rico para enmendar, alterar, modificar o revocar las
leyes sobre contribución de ingresos vigentes en Puerto Rico, me-
diante debida legislación, por la presente queda derogada en Puerto
Rico la Ley Federal de septiembre 8, 1916, según fué enmendada
en octubre 3 de 1917, excepto que la misma continuará en vigor en
lo que respecta a la imposición y cobro de todas las contribuciones
devengadas en virtud de la misma, y para la imposición y cobro
de todas las multas que hayan sido impuestas, o fuere necesario
imponer en relación con dichas contribuciones; *Disponiéndose* que
para el año natural de 1918, no se cobrará ninguna contribución
de ingresos distinta de la establecida por la presente Ley." Leyes
de 1919, pág. 671.

La ley del Congreso a que se refiere la Legislatura de
Puerto Rico es la ley sobre *"War Income Tax,"* cuya sec-
ción 5, lee como sigue:

"Sección 5.—Que las disposiciones de este Título no se extende-
rán a Puerto Rico ni las Islas Filipinas, y las legislaturas de Puerto
Rico y las Filipinas tendrán facultad para enmendar, alterar, modi-
ficar o derogar, mediante la adecuada legislación, las leyes de con-
tribución sobre rentas en vigor en Puerto Rico y en las Filipinas,
respectivamente." 40 U. S. Statutes at Large, 302.

Además el 24 de febrero de 1919 se aprobó la ley del
Congreso para proveer rentas y para otros fines, cuya sec-
ción 261, dice:

"Sección 261.—Que en Puerto Rico y las Islas Filipinas la contribución sobre rentas será impuesta, tasada, cobrada y pagada de conformidad con las disposiciones de la Ley de Rentas de 1916 según ha sido enmendada.

"Las planillas se harán y las contribuciones se pagarán de acuerdo con el Título I de dicha ley en Puerto Rico o en las Islas Filipinas, según los casos, por (1) todo individuo que sea ciudadano o residente de Puerto Rico o las Islas Filipinas o derive rentas de fuentes allí existentes, y (2) toda corporación creada u organizada en Puerto Rico o las Islas Filipinas o que derive rentas de fuentes allí existentes. Un individuo que no sea ciudadano ni residente de Puerto Rico o de las Islas Filipinas pero derive rentas de fuentes allí existentes pagará contribución en Puerto Rico o las Islas Filipinas como individuo extranjero no residente, y una corporación creada u organizada fuera de Puerto Rico o de las Islas Filipinas y que derive rentas de fuentes allí existentes pagará contribución en Puerto Rico o las Islas Filipinas como corporación extranjera. Para los fines de la sección 216 y del párrafo (6) del inciso (*a*) de la sección 234, una contribución impuesta en Puerto Rico o las Islas Filipinas sobre la renta neta de una corporación no será considerada como una contribución de acuerdo con este Título.

"Las legislaturas de Puerto Rico y de las Islas Filipinas tendrán facultad para enmendar, alterar, modificar o derogar, mediante la adecuada legislación, las leyes de contribución sobre rentas en vigor en Puerto Rico y en las Islas Filipinas, respectivamente." 40 U. S. Statutes at Large, 1.087.

No hay duda alguna del poder del Congreso para actuar en la forma en que lo hizo con respecto a Puerto Rico. Su autoridad emana claramente de la Constitución y sus Enmiendas y del Tratado de París. No seguiremos a las partes en su discusión sobre este extremo. Pero los apelantes sostienen que partiendo de la base de las propias leyes federales citadas, la Legislatura de Puerto Rico carecía de facultad para aprobar la ley No. 80 de 1919 (p. 613) que es una ley de *"income tax,"* pues ella sólo tenía poder para enmendar, alterar, modificar o derogar la Ley Federal sobre la materia, no para poner en vigor una ley nueva.

El apelado contesta que independientemente de las leyes especiales citadas, la sección 37 del Acta Jones (marzo 2,

1917, Fed. Stat. Ann. 1918) al disponer que ''La autoridad legislativa estatuída por la presente se aplicará a todos los asuntos de carácter legislativo que no sean localmente in-aplicables . . . . .'' confirió a la Legislatura de Puerto Rico todo el poder necesario para aprobar leyes sobre *''income tax.''* Cita el apelado en apoyo de su contención el caso de *W. C. Peacock & Co. v. Pratt,* 121 Fed. 772 (58 C. C. A. 48), en el que la Corte de Circuito de Apelaciones del Noveno Circuito, interpretando un precepto semejante de la Ley Orgánica de Hawaii, dijo:

''La única restricción de las facultades de la Legislatura territorial contenida en el acta orgánica es la disposición. al efecto de que el 'poder legislativo del territorio se extenderá a todos los asuntos que sean legítimamente materia de legislación y no inconsistentes con la Constitución y leyes de los Estados Unidos aplicables a la región.' No hay limitación expresa de poderes en materia de contribución. La sección citada es idéntica a las que se han insertado habitualmente en las leyes orgánicas estableciendo gobiernos territoriales. Dispone en substancia que la legislatura territorial no podrá invadir los dominios del Congreso en cuanto a materia de legislación; pero aparte de eso le concede todos los poderes que tiene la legislatura de un estado. Clinton v. Englebrecht, 13 Wall. 434 (U. S.), 20 L. Ed. 659; Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654; Cope v. Cope, 137 U. S. 682, 11 Sup. Ct. 222, 34 L. Ed. 832. En el caso de Clinton v. Englebrecht se dijo lo siguiente:

'' 'La teoría sobre la cual se han organizado los gobiernos para las distintas regiones del territorio de los Estados Unidos, ha sido siempre la de dejar a los habitantes de los mismos todas las facultades del gobierno propio compatibles con la supremacía y supervisión de la autoridad nacional y con ciertos principios fundamentales establecidos por el Congreso.' ''La disposición de que el poder legislativo se extenderá a 'todos los asuntos que sean legítimamente materia de legislación' incluye, por lo tanto, amplia y completa facultad para legislar en materia de contribución.''

Y contesta también el apelado que la sección 3 del Acta Jones no es obstáculo para que la sección 37 pueda ser interpretada en el sentido de conferir a la Legislatura toda

la autoridad necesaria para aprobar leyes sobre *"income tax,"* sino que por el contrario le confiere expresa autoridad para ello pues el *"income tax"* se ha considerado por las cortes como un arbitrio, *"excise",* y por consiguiente está comprendido dentro de las "rentas internas." Cita el caso de *Hattiesburg Grocery Co. v. Robertson,* 89 So. 369 (126 Miss. 655), donde se resolvió que:

"Una contribución sobre la renta es en último análisis simplemente una parte de la renta tomada por el gobierno para apropiársela como su participación en ella, y aunque comprende algunos de los elementos tanto de la contribución sobre la propiedad como de la contribución sobre la persona, no puede estrictamente clasificarse como una contribución sobre una u otra, pues es general y necesariamente un arbitrio."

A nuestro juicio no precisa entrar en el estudio y decisión del alcance que puedan tener las secciones 3 y 37 de nuestra Acta Orgánica. Creemos que si algo faltaba, fué conferido a la Legislatura por el Congreso por las leyes especiales citadas y que la Legislatura de Puerto Rico no fué más allá de sus atribuciones al aprobar la ley No. 80 de 1919 (p. 613) que examinada en sí misma no es una ley nueva. Deroga la ley del Congreso al parecer para despejar la situación por completo, pero pone en vigor preceptos que sustituyen los del Congreso sobre la materia. Las leyes de Puerto Rico sobre *"income tax,"* pueden considerarse como enmiendas o modificaciones de la ley federal.

[2] Al comenzar a argumentar en sus alegatos la segunda de las cuestiones envueltas, dicen los apelantes:

"Aceptando, en aras de la argumentación, que las leyes de contribuciones sobre ingresos votadas por la Asamblea Legislativa de Puerto Rico tuvieran fuerza y valor por haber sido adoptadas con plenitud de facultades, sostenemos que en ese caso la contribución impuesta y cobrada al apelante es injusta e ilegal por no estar autorizada por la ley aplicable al caso."

Luego analizan las leyes 59 de 1917 (vol. II, p. 385) y 8 de 1918 (vol. II p. 17) y sostienen que son las únicas aplica-

bles al caso, ya que los ingresos de los demandantes se devengaron en el año económico de 1917 a 1918. Y como de acuerdo con la sec. 4 de la Ley No. 59—leyes de 1917, (vol. II, p. 387),—entre otros, *todo socio de una sociedad civil tenía derecho a deducir de su declaración individual los ingresos obtenidos como tal socio,* insisten los demandantes en que resultaría inconsistente con las propias actuaciones de la Legislatura aplicar como aplicó el Tesorero al caso de los demandantes la disposición contenida en la sección 2 de la Ley No. 80 de 1919 (p. 615), que dice:

"El primer año contributivo para los efectos de la presente ley será el año natural que termine el 31 de diciembre de 1918 o cualquier período de contabilidad de doce meses que termine durante el año natural de 1918."

Por dos veces reconocen los apelantes en sus alegatos el poder de la Legislatura para imponer contribuciones sobre ingresos devengados en un período anterior a la aprobación de la ley, pero insisten en que aquí se fué más lejos, porque el mismo legislador había declarado exento de tributo el ingreso que consideró tributable el tesorero.

En el caso de *Brushaber* v. *Union Pacific Railroad Co.,* 240 U.S. 1, 20 (60 L. ed. 493), la Corte Suprema de los Estados Unidos, por medio del Chief Justice White, se expresó así:

"La ley fué pasada en octubre 3, 1913, y disponía para el cobro de una contribución anual sobre rentas de diciembre a diciembre de cada año. Excepcionalmente, sin embargo, fijaba un primer período que incluía solamente el tiempo entre marzo 1º y diciembre 31, 1913, y se ataca esta limitada retroactividad como contraria a la cláusula del debido procedimiento de ley contenida en la Quinta Enmienda y como incompatible con la propia Enmienda Décimosexta. Pero el tiempo de la retroactividad no se extendía más allá de la época en que la Enmienda entró en vigor, y no puede discutirse la existencia de la facultad, por virtud de la Enmienda, para imponer durante ese *período de tiempo,* la contribución, sin prorrateo, y en cuanto se refiere a las limitaciones de la Constitución en otros sentidos la contención no está abierta a discusión, pues en *Stockdale* v.

*Insurance Companies,* 20 Wall. 323, 331 (22 L. ed. 348), sosteniendo una disposición de una anterior ley de contribución sobre rentas que era atacada por razón de su retroactividad, se dijo:

" 'El derecho del Congreso a imponer esta contribución por medio de una nueva ley, aunque su medida haya de regirse por la renta del año anterior, no puede dudarse; y mucho menos puede dudarse que el Congreso podía imponer tal contribución sobre la renta del año en curso, aunque parte del año había transcurrido cuando la ley fué aprobada. La resolución conjunta de julio 4, 1864, imponía una contribución de cinco por ciento sobre todas las rentas del año anterior, aunque ya se había pagado una contribución sobre las mismas, y nadie dudó de la validez de la contribución ni intentó resistirse a ella.' "

La circunstancia de que el ingreso estuviera exento de contribución de modo expreso por la ley anterior, en el caso de que así fuera en verdad, no impide actuar a la Legislatura. De hecho todo ingreso sobre el cual no se ha fijado una contribución de modo expreso, está exento de contribución. Ambos casos son iguales en última instancia.

[3] La tercera de las cuestiones envueltas se presenta por los apelantes en su alegato, así:

"En el párrafo C de la Alegación XVII de la demanda, alega vuestro peticionario que los ingresos que han servido de base para la imposición de la contribución que es objeto de esta querella, no fueron ingresos realmente percibidos por vuestro peticionario, sino devengados de acuerdo con los balances de la entidad de que es socio y acumulados a las resultas de la gestión social hasta la liquidación de la susodicha sociedad Sucs.. C. y J. Fantauzzi."

Las demandas en estos casos son peculiares. No contienen una simple narración concisa de los hechos, sino que repiten y varían y argumentan. Tomándolos de ellas hemos transcrito literalmente los motivos por virtud de los cuales los demandantes alegan que no están obligados a pagar la contribución de que se trata. Aunque la forma alternativa que se emplea y la insinuación que se hace de que los ingresos se acumularon a las resultas de la gestión social, introduce alguna confusión, es evidente que la sociedad liquidó

sus operaciones y se asignó a cada socio la suma correspondiente y tal suma quedó convertida en la propiedad individual del socio que pudo retirarla o dejarla en la sociedad.. Y siendo ello así, la cuestión queda resuelta aplicando la jurisprudencia establecida por esta misma corte en el caso de *Serrallés* v. *Gallardo,* 32 D.P.R. 706.

"El beneficio que se deriva del interés de una persona en los negocios de una sociedad, es parte de su ingreso. Las ganancias netas de una sociedad constituyen ingresos de la firma, mientras tanto permanezcan en la posesión de dicha firma o al crédito de la misma. Pero cuando una parte cualquiera de los beneficios se adjudica y reparte al socio individual, tal parte es y constituye un ingreso individual o particular del socio." Black, Income and other Federal Taxes, (1920) párrafo 60, pág. 72, citado en Serrallés, *supra.*

*Por virtud de todo lo expuesto, opinamos que deben confirmarse las sentencias recurridas.*