COMMONWEALTH *vs.* HOWARD A. RICHARDSON.

Franklin.    Sept. 17. — Nov. 9, 1878.    ENDICOTT & SOULE, JJ., absent

An indictment, on the Gen. Sts. *c.* 165, § 4, for polygamy, alleged that the defend-
ant, on a certain day, was lawfully married to A.; and that afterwards, on a
certain day, he "did unlawfully marry and take to his wife one B., he, the
defendant, then and there being married and the lawful husband of the said A.,
she the said A. being his lawful wife, and living, and he, the said defendant,
never having been legally divorced from the said A." It appeared in evidence
that the defendant was lawfully married to A.; that afterwards she was duly
divorced from him for misconduct on his part; and that he then married B.
*Held*, that there was a variance between the allegations and the proof.

INDICTMENT on the Gen. Sts. *c.* 165, § 4, averring that Howard
A. Richardson, on August 6, 1848, at Foxborough, "being then
and there a single man unmarried, was lawfully married to one
Almira F. Belcher, and her the said Almira F. Belcher then and
there had and took for his the said Howard A. Richardson's wife,
and cohabited with her as his lawful wife, and that afterward
he, the said Howard A. Richardson, on the seventeenth day of
October, in the year of our Lord one thousand eight hundred and
seventy-six, at Shutesbury, in the county of Franklin, did unlaw-
fully marry and take to his wife one Mary E. Flagg, he, the said
Howard A. Richardson, then and there being married and the
lawful husband of the said Almira F. Belcher, she the said
Almira F. Belcher being his lawful wife, and living, and he, the
said Howard A. Richardson, never having been legally divorced
from the said Almira F. Belcher, and that the said Howard A.
Richardson afterward did cohabit and continue to cohabit with
the said Mary E. Flagg, as his second wife, in this state, to wit,
at New Salem, in the county of Franklin, for a long space of
time, to wit, for the space of one year; whereby and by force of
the statute in such case made and provided he, the said Howard
A. Richardson, is deemed guilty of the crime of polygamy. And
so the jurors aforesaid, upon their oath aforesaid, do say that the
said Howard A. Richardson in manner and form as aforesaid at
New Salem aforesaid, on the first day of January now last past,
did commit the crime of polygamy."

At the trial in the Superior Court, before *Pitman*, J., it ap-
peared that Almira F. Belcher, named in the indictment, was

lawfully married to the defendant and cohabited with him as his wife for some years; that in March, 1857, she was duly divorced from him by a decree of the Supreme Judicial Court, sitting in the county of Norfolk, dissolving the bonds of matrimony between them for misconduct on his part; and that thereafterwards she married one Eddy, since deceased. The government offered evidence tending to prove the other essential allegations in the indictment.

The defendant contended that there was a variance between the proof and the allegations of the indictment, as to the first wife; and that upon these facts it was not competent for the jury to convict the defendant on this indictment. But the judge ruled otherwise; the jury returned a verdict of guilty; and, the question of law arising at the trial, being in the opinion of the presiding judge so doubtful as to require the decision of this court, was reported, at the request of the defendant, for its determination

*A. De Wolf*, for the defendant.

*C. R. Train*, Attorney General, for the Commonwealth.

LORD, J. The status of a party, whose contract of marriage has been judicially dissolved for his fault, has not, in this Commonwealth, been precisely defined. In *Commonwealth* v. *Putnam*, 1 Pick. 136, Mr. Justice Wilde says: " By the divorce, the first marriage was dissolved, and, but for the second section of the act of 1784, *c.* 40, the second marriage would have been lawful by our laws;" and adds: " Notwithstanding the restraints imposed on the husband, he being the guilty cause of the divorce, the dissolution of the marriage contract was total, and not partial." In *West Cambridge* v. *Lexington*, 1 Pick. 506, Chief Justice Parker, in giving the opinion of the court, speaks of such party as "not being in a legal sense a married man, and perhaps not to be considered as having a former wife living, the decree of divorce having terminated the relation of husband and wife." We do not deem it necessary in this case to determine whether any or what marital duties or obligations remain upon such person.

By the Gen. Sts. *c.* 165, § 4, it is enacted that "whoever, having a former husband or wife living, marries another person, or continues to cohabit with such second husband or wife in this state, shall (except in the cases mentioned in the following section) be deemed guilty of polygamy." The following section

is in these words : " The provision of the preceding section shall not extend to any person whose husband or wife has been continually remaining beyond sea, or has voluntarily withdrawn from the other, and remained absent for the space of seven years together, the party marrying again not knowing the other to be living within that time, nor to any person legally divorced from the bonds of matrimony, and not the guilty cause of such divorce." This statute is substantially the same as the St. of 1784, *c*. 40 ; and from that time, and for a period long before, to the present, has been in substance the law of the Province and the Commonwealth. The same provisions were incorporated into the Rev. Sts. *c*. 130.

In *Commonwealth* v. *Putnam*, *ubi supra*, the guilty party in the divorce suit married again in another state, and was indicted·for the crime of adultery in this state. In *Commonwealth* v. *Hunt*, 4 Cush. 49, the guilty party married again, also in another state, and the indictment charged her with lewd and lascivious cohabitation in this state with the party to whom she claimed to be married. In each of these cases the court held that the offence charged was not the offence committed. In·the former case, the jury found a special verdict establishing the facts of the former marriage, the divorce for the defendant's adultery, his second marriage in Connecticut and his cohabitation in this state. Lincoln, in behalf of the defendant, in argument, is reported as saying, " Johnson defines adultery ' the act of violating the bed of a married person.' The defendant has not done this. He has not violated any plighted faith to his former wife." " The indictment might as well have been for polygamy as for adultery ; " "though in truth he could not be indicted for either, unless he were a married man at the time of the second marriage." In declaring the result at which the court arrived, Mr. Justice Wilde utters the dictum, " The defendant should have been indicted on the second section of the act referred to," which is substantially the same as the Gen. Sts. *c*. 164, §§ 4, 5. Although a dictum by that magistrate is always entitled to most respectful consideration, it is not to be regarded as the judgment of the court. The dictum is however qualified by the statement, " The second marriage, with all the other facts constituting the crime of polygamy, should have been set forth in

the indictment, so that the defendant might have been prepared to answer and defend himself;" showing that that learned judge deemed it necessary that the divorce and the subsequent marriage of the guilty party should be alleged in the indictment. 1 Pick. 139. In the latter case, Mr. Justice Dewey speaks more cautiously, and says, " If the facts in this case afford ground for any indictment under the Rev. Sts. *c.* 130, it would be more properly an indictment upon the second section, for unlawfully cohabiting within the state, with Davis, as husband and wife, the defendant having a former husband living, and not coming within the exception of the third section, as a person 'not the guilty cause of the divorce;'" decisively intimating that, if the indictment could be maintained under that statute, it must aver the facts which bring the party within its terms. 4 Cush. 50.

In *Commonwealth* v. *Lane*, 113 Mass. 458, the question pre sented in this case did not arise, and was not considered by the court; for, although the defendant was charged with polygamy, under the same statute, for marrying a second time during the life of the former wife, the defence was that his marriage was a legal marriage under the law of the State of New Hampshire where it was consummated, and the court so held.

These three cases, it is believed, are the only ones which have been decided in this Commonwealth in which the subsequent marriage of the guilty divorced party has been before the court upon an indictment. It is certain, that it has never been decided by this court that such party can be convicted of polygamy under the provisions of the Gen. Sts. *c.* 165, § 4, or the previous statutes of the same character. Nor do we deem it necessary, for reasons hereafter to be stated, now to decide that question.

If that question could be presented nakedly, it would be a matter deserving of grave consideration whether the party charged could be said in criminal pleading to be one having a husband or wife living, or as being a lawful husband or wife, but we are quite certain that the facts should be stated which bring the party within the provisions of the statute. It is to be noticed that the exceptions in the statute are not such as are ordinarily introduced in legislation affecting the act done, but relate entirely to the person, and without these exceptions the law would perhaps be construed the same as with them. See

*Commonwealth* v. *Jennings*, 121 Mass. 47. But two classes of persons are referred to in the provisos. The first class includes "any person whose husband or wife has been continually remaining beyond sea, or has voluntarily withdrawn from the other, and remained absent for the space of seven years together, the party marrying not knowing the other to be living." In such case the party is presumed to be dead; and although, if he or she should return, the marriage might be void, it certainly would be straining the law to hold such one criminally guilty in doing an act which he or she, by law, might properly presume to be a lawful act. *Commonwealth* v. *Thompson*, 6 Allen, 591, and 11 Allen, 23. The other class includes such as are lawfully divorced, being innocent. Under the law he or she is entitled to have the marriage contract dissolved. Certainly, without any proviso or exception no such person, on marrying again, could be deemed to be guilty of polygamy; and it is not improbable that the exception was inserted out of extreme caution, and possibly because the act of 1784 had an exception of a similar character. It was this: "Provided also, that this act or anything therein contained shall not extend to the wife of any married man who shall willingly absent himself from his said wife, by the space of seven years together, without making suitable provision for her support and maintenance in the mean time, if it shall be in his power so to do."

The St. of 1784 was but a reënactment, with of course a different penalty, of the Province law of 6 W. & M. (1694–5) c. 5, against polygamy, with a proviso in relation to continuous absence in almost the identical language of the Gen. Sts. c. 165. 1 Prov. Laws, (State ed.) 171. The St. of 6 W. & M. c. 5, contains also a proviso excepting from its operation divorced parties, but does not distinguish between the guilty and innocent party; its language being, "shall not extend to any person or persons, that are or shall be at the time of such marriage divorced by any sentence had, or hereafter to be had, as the law of the Province in that case has provided."

Whether the guilty party would at that time have been deemed a divorced party, it is not necessary to inquire. Four years later, by St. 10 W. III. (1698) c. 19, the proviso in relation to time of absence was modified, and it was enacted, "that if any

married person, man or woman, has lately or shall hereafter go to sea in any ship or other vessel, bound from one port to another, where the passage is usually made in three months' time, and such ship or other vessel has not been, or shall not be heard of within the space of three full years next after their putting to sea from such port, or shall only be heard of under such circumstances, as may rather confirm the opinion, commonly received, of the whole company's being utterly lost, in every such case, the matter being laid before the Governor and Council, and made to appear, the man or woman, whose relation is in this manner parted from him or her, may be esteemed single and unmarried ; and upon such declaration thereof, and license obtained from that board, may lawfully marry again ; any law, usage, or custom to the contrary notwithstanding." 1 Prov. Laws, 353.

Such being the history of the law and its condition till 1841, we feel warranted in inferring that, at that time, the Legislature did not deem the marriage of the guilty party who had been divorced to be polygamy; for in that year was enacted the following statute : " Whenever a divorce from the bond of matrimony shall be decreed for any cause allowed by law, the guilty party shall be debarred from contracting marriage during the lifetime of the innocent party ; and if the guilty party shall contract such marriage, the same shall be void, and such party shall be adjudged guilty of polygamy." St. 1841, *c.* 83. This is substantially reënacted in the Gen. Sts. *c.* 107, § 25.

This kind of legislation has many precedents. Any person who embezzles property is deemed by the statute to have committed the crime of larceny; it is not sufficient, however, in an indictment for such offence, simply to charge stealing in the usual manner, but the facts which constitute the embezzlement must be set out, with the averment of the legal conclusion that thereby and by force of the statute the party charged has committed the crime of larceny.

If, however, we assume that, prior to the St. of 1841, a divorced party, being the guilty cause of the divorce, might be guilty of polygamy by marrying again during the life of his former wife, still the result must be the same, in this case, as if no such offence could, prior to that statute, be committed; for it is quite clear that, under the existing statutes, the crime of

polygamy may be committed by persons under entirely diverse circumstances, and, by the familiar rules of pleading, a party charged with an offence is entitled to a statement in the indictment of the facts which constitute the offence; and, if an offence may be committed in either of various modes, the party charged is entitled to have that mode stated in the indictment which is proved at the trial; and when one mode is stated and proof of the commission of the offence by a different mode is offered, such evidence is incompetent by reason of variance. It is clear, therefore, that, whether we decide that the offence of polygamy might have been committed by the guilty divorced party or not, the result must be the same; for the facts proved would show either that no crime was committed, or, if committed, there was a variance between the allegata and the probata.

*New trial ordered.*