## SMITH v. UNITED STATES.
### No. 10541.

Circuit Court of Appeals, Eighth Circuit.
May 4, 1936.

J. A. Tellier, of Little Rock, Ark. (H. R. Partlow and L. V. Rhine, both of Paragould, Ark., on the brief), for appellant.

M. D. Bowers, Asst. U. S. Atty., of Little Rock, Ark. (Fred A. Isgrig, U. S. Atty., of Little Rock, Ark., on the brief), for the United States.

Before SANBORN, VAN VALKEN-BURGH, and FARIS, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

In September, 1933, one Arthur E. York, of Corning, Ark., had on file with the Administrator of Veterans' Affairs claims for accrued compensation because of injuries sustained by him in the military service of the United States in the World War. September 9, 1933, appellant received a letter from one E. L. Holloway, attorney for said soldier, requesting his aid in securing payment of the claim. September 25, 1933, appellant wrote Holloway that he thought it would be advisable to bring a suit in mandamus against the Administrator and inclosed in his letter a power of attorney and a fee agreement to be executed by the soldier; subsequently a power of attorney was executed by York, and a fee agreement in the words and figures following:

"Fee Agreement.

"For his/their professional services in the preparation and prosecution of my claim for accrued permanent and total disability compensation by proceeding in the Supreme Court of the District of Columbia, Court of Claims, or otherwise at his discretion I/we promise to pay William Wolff Smith, of Washington, D. C., and ———, of ———, $——— No. ———, cash, and ——— forty (40%) per centum of the amount of such compensation received by me less the cash payment above mentioned, and I/we promise to advance to or reimburse him/them for any expenses incurred by him/them in the securing of evidence, filing fees, taking of testimony, printing of briefs, etc., in the prosecution of this claim, from the amount paid on said claim, or otherwise.

"Name: Arthur E. York.
"Witness
"E. L. Holloway,
"Date Dec. 1, 1933."

December 7, 1933, appellant states that he contacted General Hines, Administrator of Veterans' Affairs, and told him that he (Smith) had been retained to file a petition for a writ of mandamus in behalf of York, but thought the right to allowance was so clear that, if the Administrator would look into the matter personally, he would order the claim paid without a suit. The next day he wrote General Hines, inclosing the power of attorney and reviewing the reasons why he thought the claim should be paid. December 22, 1933, the Administrator wrote appellant returning the power of attorney unrecognized because appellant had not been admitted to practice before the Veterans' Administration. In the same letter York's case was reviewed and his claim denied. As stated further by appellant, and as shown by certified copies of court files admitted in evidence, on January 24, 1934, appellant, as attorney for York, filed in the Supreme Court of the District of Columbia a petition praying that a writ of mandamus be issued and directed to Frank T. Hines, Administrator of Veterans' Affairs

as respondent, "commanding him to rate petitioner York as permanently and totally disabled for compensation purposes as of August 27, 1919, and to make a proper award to him and to pay him, or cause to be paid to him, the difference between the amount of compensation paid to petitioner from August 27, 1919 to June 30, 1933, and the amount of compensation to which . petitioner was and is entitled by law as one permanently and totally disabled for compensation over that period." This petition was verified by the petitioner. A rule to show cause why the writ should not issue as prayed was served upon respondent, commanding him to appear on the 7th day of February, 1934. Upon motion of counsel for respondent, it was by the court ordered that this rule to show cause be continued to February 27, 1934. A second continuance to · March 6, 1934, was granted upon motion of counsel for respondent, who requested additional time for filing answer upon the ground that the Administrator contemplated taking the action prayed in the petition. February 28, 1934, the answer was filed stating that, since the service of the petition in mandamus petitioner had been rated as permanently and totally disabled within the meaning of the acts of Congress authorizing the payment of both compensation and pension, a proper award had been made, and a check in payment mailed to petitioner at his address in Corning, Ark. Thereafter, it appearing to the court that the prayers of the petition had been complied with, it was ordered that the petition be dismissed and the rule discharged. In addition to the rating of permanent and total disability for compensation purposes, the soldier was given an award of $3,299.87 for accrued compensation due him. This sum was paid directly to York, who refused to pay a fee to appellant herein. April 1, 1934, appellant brought suit against York in the chancery court for the Western district of Clay county, Ark., for a fee of $1,284.00 and for costs advanced in the sum of $11— a total of $1,295. Upon demurrer, the cause was transferred at law to the circuit court of Clay county, Ark. The defendant answered, alleging, among other things, that the fee contract was procured by misrepresentation and fraud, that the Administrator made and paid · the award of his own volition, and further that the contract of employment and fee, if made, was void and of no force and ef-

fect because in violation of the laws of the United States in such case made and provided, and of the rules and regulations issued by authority thereof. It appears that evidence was taken largely by interrogatories and cross-interrogatories; and, from appellant's statement admitted in evidence, that a settlement was reached, resulting in the following judgment entry in the circuit court of Clay county, Ark.:

"On this day all the parties to this suit in person and by attorneys; all parties agree to waive trial by jury, and submit the cause to the court sitting as a jury. The court, after hearing the evidence upon the pleadings herein and exhibits thereto, finds for the plaintiff in the sum of $569.20, and that the plaintiff herein should pay all costs of this action.

"It is therefore by the court considered, ordered and adjudged that the Corning Bank and Trust Co. garnishee herein, shall be fully discharged from all liability upon the payment to the plaintiff William Wolff Smith of the sum of $569.20, that the plaintiff William Wolff Smith shall pay all costs of this action, and the remainder of the deposit of the defendant Arthur E. York, garnished, herein, shall be paid to the said Arthur E. York by the said Corning Bank and Trust Company and this judgment· is fully satisfied.

"Neil Killough, Judge.
"O. K.
"Partlow and Rhine,
    "Atty. for Plaintiff.
"C. T. Bloodworth,
    "For Defendant."

This judgment was satisfied by payment in full to appellant October 10, 1934. It is in evidence that York has received considerably more than $10,000 in cash and is now receiving $182.50 per month, and will do so for the remainder of his life.

January 24, 1935, an indictment was filed in the District Court of the United States for the Eastern District of Arkansas charging: "That on and prior to January 24, 1934, William Wolff Smith and Ernest L. Holloway assisted and rendered assistance to Arthur E. York, who was a veteran of the World War, in the preparation and execution of the necessary papers in the presentation to the United States Veterans Administration of a claim of the said Arthur E. York for certain moneys claimed to be due him as accrued permanent and total disability compensation under the pro-

visions of the Act of Congress of the United States approved June 7, 1924, as amended, known as the World War Veterans' Act, and that thereafter, to-wit, on the 31st day of October, 1934, the said William Wolff Smith and Ernest L. Holloway, in Corning, in Clay County, in the State of Arkansas, did knowingly, willfully, unlawfully and feloniously charge and receive from the said Arthur E. York the sum of $529.19 as a fee and compensation for furnishing such assistance to the said Arthur E. York in the preparation and execution of said papers in the presentation of said claim of the said Arthur E. York to the said United States Veterans Administration, which said sum of money was then and there in excess of the sum which the said William Wolff Smith and Ernest L. Holloway were then and there entitled to charge and receive from the said Arthur E. York for such assistance so rendered by them, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

This indictment was attacked by a motion to quash, which was overruled, as was also a motion for a bill of particulars. A jury was waived by written stipulation. The court found against appellant and assessed a fine of $400.

Appellant urges seven points in support of his appeal for reversal of the judgment against him: (1) Error in overruling the motion to quash the indictment; (2) error in overruling the motion for a bill of particulars; (3) error in admitting the written statement of defendant; (4) refusal to grant motions for a directed verdict; (5) refusal to grant defendant's requested declarations of law; (6) defendant's collection of a fee under the judgment of the state court was not a violation of any criminal statute of the United States nor of the statute under which he was indicted; (7) error in overruling the motion in arrest of judgment.

The statute under which this prosecution is brought appears as section 551, 38 U.S.C.A. p. 263, and reads thus: "Amount permitted to be paid agents or attorneys; solicitation, etc., of unauthorized fees or compensation; punishment. Except in the event of legal proceedings under section 445 of this chapter, no claim agent or attorney except the recognized representatives of the American Red Cross, the American Legion, the Disabled American Veterans, and Veterans of Foreign Wars, and such other organizations as shall be approved by the director shall be recognized in the presentation or adjudication of claims under Parts II, III, and IV of this chapter, and payment to any attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers in any application to the bureau shall not exceed $10 in any one case: Provided, however, That wherever a judgment or decree shall be rendered in an action brought pursuant to said section 445 of this chapter the court, as a part of its judgment or decree, shall determine and allow reasonable fees for the attorneys of the successful party or parties and apportion same if proper, said fees not to exceed 10 per centum of the amount recovered and to be paid by the bureau out of the payments to be made under the judgment or decree at a rate not exceeding one-tenth of each of such payments until paid. Any person who shall, directly or indirectly, solicit, contract for, charge, or receive, or who shall attempt to solicit, contract for, charge, or receive, any fee or compensation, except as herein provided, shall be guilty of a misdemeanor, and for each and every offense shall be punishable by a fine of not more than $500 or by imprisonment at hard labor for not more than two years, or by both such fine and imprisonment. (June 7, 1924, c. 320, § 500, 43 Stat. 628; Mar. 4, 1925, c. 553, § 17, 43 Stat. 1311)."

Section 445 referred to (38 U.S.C.A. p. 206) provides for actions against the United States on claims under contracts of insurance in event of disagreement between claimants and the Veterans' Bureau. It will be noted that the indictment quoted above follows with precision the language of the statute charging both Holloway and appellant with having charged and received from York a fee in excess of the sum allowed by the statute for assistance rendered to the soldier in the preparation and execution of the necessary papers in the presentation of his claim to the United States Veterans' Administration for certain moneys claimed to be due him as accrued permanent and total disability compensation under the provisions of the Acts of Congress. While the defendants named were indicted jointly, the case below, before the court sitting as a jury, proceeded against them separately and distinctly, and we are concerned here only with the rec-

ord of appellant's disclosed activities in the matter. Appellant first attacked the indictment by a motion to quash, which may be accepted, as counsel for appellee practically concede, as a special demurrer. Under this assignment the first contention is that the section under which this prosecution is brought had theretofore been repealed by section 17 of title 1 of the Act of March 20, 1933, commonly known as the Economy Act. This section now appearing as section 717 and 718, 38 U.S.C.A., provides that: "All public laws granting medical or hospital treatment, domiciliary care, compensation and other allowances, pension, disability allowance, or retirement pay to veterans and the dependents of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection, and the World War, or to former members of the military or naval service for injury or disease incurred or aggravated in the line of duty in the military or naval service (except so far as they relate to persons who served prior to the Spanish-American War and to the dependents of such persons, and the retirement of officers and enlisted men of the Regular Army, Navy, Marine Corps, or Coast Guard) are hereby repealed, and all laws granting or pertaining to yearly renewable term insurance are hereby repealed, but payments in accordance with such laws shall continue to June 30, 1933."

The Supreme Court, in Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L. Ed. 1434, held that this provision of the Economy Act was unconstitutional in so far as it affected policies of yearly renewable term insurance issued under the War Risk Insurance Act (40 Stat. 409), for the reason that such are valid contracts of the United States, are property, and that the rights of private individuals arising out of them are protected by the Fifth Amendment. The court further held that the dominant intention of Congress in enacting this repealing act was to abolish rights, not remedies. It is nevertheless the contention of appellant that, since pensions, compensation, and allowances are mere gratuities, which may be withdrawn at any time in the discretion of Congress, the repeal of such by section 17 of title 1 of the Economy Act (38 U.S.C.A. §§ 717, 718) is still effective upon the well-known principle that a statute void in part is not necessarily void in its entirety, and that the repeal of compensation and other privileges

and allowances includes section 551, 38 U.S.C.A., which penalizes the charging and receipt of any fee or compensation in excess of the amounts therein provided. Appellee points out that section 17 of title 1 of the Economy Act undertook expressly to repeal "all public laws granting medical or hospital treatment, domiciliary care, compensation and other allowances, pension, disability allowance," etc.; that section 500 (38 U.S.C.A. § 551) is not such a public law granting compensation, etc., but is a penal statute limiting the compensation which an attorney or agent may receive in assisting a beneficiary to receive the benefits due him, and punishing any person who shall solicit, contract for, charge, or receive any fee or compensation except as therein provided. Section 500 of the World War Veterans' Act, as amended (38 U.S.C.A. § 551) was not expressly repealed by said section 17, but appellant contends that it was repealed by implication. Such repeals are not favored, and will not be held to exist if there be any other reasonable construction. Ex parte Webb, 225 U.S. 663, 32 S.Ct. 769, 56 L.Ed. 1248; Cope v. Cope, 137 U.S. 682, 11 S. Ct. 222, 34 L.Ed. 832.

Section 17 of title 1 of the Economy Act made provision for pension to certain classes of persons who served in the active military or naval service during the World War, and who are permanently disabled as a result of disease or injury incurred in line of duty in such service. 38 U.S.C.A. §§ 701 and 702. It is pointed out that section 500 (38 U.S.C.A. § 551) was not re-enacted in the Economy Act of March 20, 1933 (48 Stat. 8). This would indicate that Congress considered it not repealed, but still in full force and effect. It is difficult to believe that it was the intention of Congress, which has been zealous in guarding and protecting the veterans from overreaching and spoliation, to repeal this section which was expressive of such congressional solicitude. In Margolin v. United States, 3 F.(2d) 602, 603, affirmed 269 U.S. 93, 46 S.Ct. 64, 70 L.Ed. 176, the Court of Appeals for the Second Circuit said: "The limitation in question was to protect from extortion a class of persons who might reasonably be thought subject to the practices of unscrupulous persons." This view is expressed in Lucas v. United States (C.C.A. 5) 80 F.(2d) 372, 374, in which, while holding that section 551 (38 U.S.C.A.) was not repealed by the

Economy Act as related to all types of war risk insurance, under the decision in Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434, the Circuit Court of Appeals for the Fifth Circuit said: "But we go further and hold that the penal provision was not intended to be repealed. It is not a law granting or pertaining to yearly renewable term insurance, but a law relating to all sorts of war risk insurance and to compensation also. If the repealing clause under discussion had been valid, it would not be held to destroy section 500 or any part of it. It would affect it not by way of repealing it, but only by removing from existence one of the subject-matters to which it applies."

In our judgment the subject-matter here under consideration was not removed from the application of this statute. York's claim for compensation was filed and pending long prior to the passage and approval of the Act of March 20, 1933. The right to compensation of veterans disabled as the result of disease or injury directly connected with active military or naval service pursuant to the provisions of the laws in effect on March 20, 1933, is recognized in the Economy Act. 38 U.S.C.A. § 718. York was paid his compensation under the provisions of the World War Veterans' Act (38 U.S.C.A. § 421 et seq.). It is incredible that Congress, while recognizing such claims to compensation, should have left the veterans exposed to the cupidity from which section 500 was designed to protect them. We hold, accordingly, that section 551 (38 U.S.C.A.) was not repealed by the Act of March 20, 1933.

It is next urged that the indictment is defective in substance because it failed to set out what constituted "necessary papers"; that defendant charged and received a fee in excess of $10, and acted as attorney or agent of the veteran. With respect to the last of these specifications, it is to be noted that the statute in terms applies to "any person" as well as an attorney or agent who does the things prohibited. Appellant acted as an agent and attorney for York in whatever he did, and a joint fee in excess of $10 is stated. In general, an indictment for a statutory offense need only charge a defendant with acts in the substantial words of the statute sufficient to apprise him of the nature of the accusation; and, if it charges all the essential elements and ingredients of the offense, it is good as against a general demurrer. In our judgment, this indictment meets these demands of pleading. But, if an indictment fails to contain details sufficient to enable a defendant to prepare his defense and to protect him against a second prosecution, it may be challenged by special demurrer or other pleading tantamount thereto. In the instant case this was done by the motion to quash, which was overruled. A bill of particulars was requested to cure the alleged omission of details, and was likewise denied. In our opinion both motions might well have been granted.

"But even though the particularity prayed be denied, though a special demurrer be interposed and overruled, or, it would seem, a bill of particulars be requested and refused, nevertheless the judgment of conviction will not on this account be reversed if from the whole record it appears that no substantial prejudice to the defendant has resulted." Myers v. United States (C.C.A.) 15 F.(2d) 977, and cases cited; Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545.

The overruling of demurrer or motion will not avail on error unless it appears "that the substantial rights of the accused were prejudiced by the refusal of the court to require a more restricted or specific statement of the particular made in which the offense charged was committed. Rev.St. § 1025 [18 U.S.C.A. § 556]." Connors v. United States, 158 U.S. 408, 411, 15 S.Ct. 951, 952, 39 L.Ed. 1033; Armour Packing Co. v. United States, 209 U.S. 56, 84, 28 S.Ct. 428, 52 L.Ed. 681.

In the instant case defendants' motion that appellee be required to produce for inspection all original papers and documents on which the government relied to prove the charges against them as alleged in the indictment was granted. There is nothing in the record indicating that appellant was taken by surprise at the trial or that his substantial rights were prejudiced in any way by the court's refusal to sustain the motion to quash or to require a bill of particulars. There was therefore no error in overruling the motion in arrest of judgment upon this ground.

Because of the circumstances attending the admission of appellant's voluntary statement made January 24, 1935, to a special agent of the United States Department of Justice, if for no other reason, the ob-

jection urged to this admission should not be sustained:

"The Court: So far as Smith is concerned, do you think there is any issue of fact that can be raised?

"Mr. Smith (the defendant): Are you going to introduce the statement I made?

"Mr. Bowers: Yes, sir.

"Mr. Smith: I think that amply covers the ground."

Later, counsel for appellant said: "I think our affirmative defense is set out in the statement signed by the defendant Smith, there." When the statement was offered, counsel for defense objected, as he said, merely for the sake of preservation of the record; the only announced basis of the objection being that the statement "would be admissible only for the purpose of impeaching the defendant." The hearing was held in a somewhat informal manner by consent of both parties, and this technical objection is therefore entitled to little consideration.

■ Appellant requested four declarations of law, the refusal of which by the trial court is assigned as error. The first asked the court to declare that the Economy Act repealed all public laws granting compensation to World War veterans. The second asked a declaration to the effect that section 500 of the Act of June 7, 1924, as amended (38 U.S.C.A. § 551), was likewise repealed by section 17 of title 1 of the Act of March 20, 1933. As a necessary result of our conclusion upon this contention hereinabove stated, we rule that no substantial error resulted from the denial of both requests. The fourth request sought to declare that the judgment of the circuit court of Clay county, Ark., was a judicial determination of the legality of the fee sued for by appellant, and that the collection of said fee under this judgment was not in violation of any criminal statute of the United States. This prosecution does not seek to impair or set aside the judgment of the state court. The indictment charges a violation of a federal statute, in that appellant, by stated means, charged and received a sum of money in excess of the amount allowed for services in connection with York's claim for compensation. This request was properly denied. The third declaration of law requested and refused is the following: "Section 500 of the Act of June 7, 1924, Acts of Congress of the United States, as amended by section 17 of the Act of Congress of March 4, 1925, Acts of Congress of the United States, does not prohibit the collection of a fee by an attorney from a veteran for the prosecution of a Mandamus proceeding in the Supreme Court of the District of Columbia for the purpose of compelling the Administrator of Veterans' Affairs to rate such veteran for disability compensation and to make an award and to pay him such disability compensation."

■ The proceeding brought by appellant as attorney for York presents something of an anomaly in pleading and practice. Under the World War Veterans' Act of June 7, 1924, § 1, and § 5 et seq. (43 Stat. 607, 38 U.S.C.A. §§ 421, 426 et seq.), the decision of the United States Veterans' Bureau on the right of compensation claimed under that act is final and conclusive and not subject to judicial review unless the decision wholly unsupported by evidence, wholly dependent on questions of law, or clearly arbitrary or capricious. Armstrong et al. v. United States (C.C.A. 8) 16 F.(2d) 387; Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256; Crouch v. United States, 266 U.S. 180, 181, 45 S.Ct. 71, 69 L.Ed. 233; United States v. Williams, 278 U.S. 255, 49 S.Ct. 97, 73 L.Ed. 314; Smith v. United States (C.C.A. 4) 57 F.(2d) 998. Compare Meadows v. United States, 281 U.S. 271, 274, 50 S.Ct. 279, 74 L.Ed. 852, 73 A.L.R. 310. The same rule of course applies to decisions by the Administrator of Veterans' Affairs. At the time appellant filed in the Supreme Court of the District of Columbia York's petition praying a writ of mandamus to compel the administrator to rate and pay to the veteran compensation additional to that theretofore awarded and paid, the administrator had already rendered a decision denying the application theretofore filed and pending. This decision was announced December 22, 1933. The suit in mandamus was filed January 24, 1934, and alleged that the Administrator had acted "without evidence to support his decision, from a mistaken or erroneous contention of law, and in an arbitrary and capricious manner." At that time the Act of March 20, 1933, was in full force and effect with respect to compensation and other forms of gratuity, and contained the following provision: "Sec. 5. All decisions rendered by the Administrator of Veterans' Affairs under the provisions of sections

701 to 721 of this title, or the regulations issued pursuant thereto, shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision." Title 1, § 5 (38 U.S.C.A. § 705).

The Supreme Court in Lynch v. United States, 292 U.S. 571, 587, 54 S.Ct. 840, 847, 78 L.Ed. 1434, holding that this section concerns pensions, compensation allowances, and special privileges, to wit, gratuities, said: "The purpose of the section appears to have been to remove the possibility of judicial relief in that class of cases even under the special circumstances suggested in Crouch v. United States, 266 U.S. 180, 45 S.Ct. 71, 69 L. Ed. 233; Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256; United States v. Williams, 278 U.S. 255, 49 S.Ct. 97, 73 L.Ed. 314; Smith v. United States (C.C.A.) 57 F.(2d) 998. Compare Meadows v. United States, 281 U.S. 271, 50 S.Ct. 279, 74 L.Ed. 852, 73 A.L.R. 310."

Inasmuch as the granting of pensions and compensation allowances are mere gratuities, which may be withdrawn at will, it would seem clear that "Congress can impose such limitations in this connection as it may deem desirable." Purvis v. United States (C.C.A. 8) 61 F. (2d) 992, 996, 998; Margolin v. United States (C.C.A. 2) 3 F.(2d) 602. If, by his allegations in the petition for a writ of mandamus, appellant sought to review the decision of the Administrator under the special circumstances suggested in the opinions of the Supreme Court above cited, he at least adopted the wrong remedy for that purpose. Mandamus seeks, not to control the exercise of discretion, but only to compel ministerial action unlawfully or arbitrarily withheld. "Courts cannot control exercise of discretion vested in Veterans' Bureau respecting adjudication of claims for disability compensation." Smith v. United States, supra. In his opinion in that case Judge Parker makes a very clear analysis of the law upon this subject, which was the same in this respect both before and after the enactment of the Economy Act of March 20, 1933. We must conclude that the filing of this petition for mandamus was not, and could not be, seriously considered as designed to do more than to bring pressure to bear upon the Administrator to make the award applied for, a quasi judicial act involving the exercise of his discretion.

This brings us to a consideration of the most serious question raised by the error assigned to the action of the court in overruling appellant's motion for a verdict and judgment upon the record as made up, "on the ground there is no evidence that he has committed the crime as set out in the indictment on which he is required to stand trial."

Referring again to the indictment, the offense specifically charged is that defendants assisted and rendered assistance to the veteran "in the preparation and execution of the necessary papers in the presentation to the United States Veterans' Administration of a claim of the said Arthur E. York for certain moneys claimed to be due him as accrued permanent and total disability compensation"; that defendants did unlawfully charge and receive from the said Arthur E. York the sum of $569.19 as a fee and compensation "for furnishing such assistance to the said Arthur E. York in the preparation and execution of said papers in the presentation of said claim"; that said sum is in excess of the sum which said defendants were entitled to charge and receive "for such assistance so rendered by them." (The italics are ours.) The pleader has thus set out a description of the specific means by which the offense was consummated. What are the necessary papers contemplated by the Congress in the enactment of this statute? The word "necessary" must be accorded some substantial meaning. The regulations of the Veterans' Bureau undoubtedly require certain essential papers to be submitted, an application for relief, proof of the veteran's service, his honorable discharge, and his permanent and total disability, service connected, etc.

In Negron v. United States (C.C.A. 1) 30 F.(2d) 584, 585, the following instruction was considered and approved: "The law reads: 'Assistance * * * in the preparation and execution of the necessary papers.' That does not mean that the defendant prepared all of the papers, or that he necessarily prepared any of the papers. If he gave his assistance in such preparation and execution, that is all that is required.'"

The court said: "It is not clear from the record what papers are referred to in the requested instruction, but they

evidently were the application of the soldier, his discharge, and affidavits showing his disability." The evident purpose of Congress was to protect veterans from extortionate fees for mere clerical assistance essential to the preparation and execution of the papers necessary to the presentation of their claims to the Veterans' Administration. It is unnecessary to define the precise limitations. to the nature of such papers under special circumstances, nor to consider the application of the clause of the statute prohibiting any person from charging or receiving any fee or compensation except as thereinabove provided. Appellant had no connection with the case until September 9, 1933. He had never met either York or his codefendant. Presumably Holloway had already prepared and filed the "necessary papers" in the presentation of the claim. Appellant neither prepared nor assisted in the preparation of any such papers in the presentation to. the Veterans' Administration. His contact and letter advising of his purpose to file a suit for a writ of mandamus, unless the claim should be allowed without suit, cannot be so construed. That action in mandamus, however futile from a legal standpoint, does not come within the terms of the indictment charge.

"As a general rule the means, or the manner of accomplishing the criminal intent and purpose, are matters of evidence for the jury, and not necessary to be set forth in the indictment. Where, however, it is necessary or where the pleader elects to set forth by averments in the indictment or information, a description of the instrument or the means by which the offense was consummated, then the evidence must correspond with the averments in general character and operation." 1 Wharton's Criminal Evidence (10th Ed.) par. 91, p. 277.

"If an offence may be committed in either of various modes, the party charged is entitled to have that mode stated in the indictment which is proved at the trial; and when one mode is stated and proof of the commission of the offence by a different mode is offered, such evidence is incompetent by reason of variance." Commonwealth v. Richardson, 126 Mass. 34, 40, 30 Am.Rep. 647.

The same rule is announced by this court in Naftzger v. United States, 200 F. 494, citing Wharton's Criminal Law, and State v. Crogan, 8 Iowa, 523.

While we by no means approve the methods employed in the exaction of this fee, which was clearly unauthorized by any provision of section 551, and while it is apparent that the claim should have been, and probably would have been, defeated in the state court if the case had proceeded to trial without agreement between the parties, nevertheless we are constrained to hold that the undisputed evidence fails to establish the specific offense charged, and that the judgment below must be reversed and the case remanded for further proceedings not inconsistent herewith. It is so ordered.

FARIS, Circuit Judge (concurring).

I concur in the reversal of this case, for the reason that the charge set out in the indictment was not borne out by the facts as disclosed by the evidence in the case, which facts were not at all in dispute.

Defendant was charged by the indictment with having exacted and received more than $10 for his services in assisting and rendering assistance to one Arthur E. York, a veteran of the World War, "in preparation and execution of the necessary papers in the presentation to the United States Veterans Administration of a claim of the said Arthur E. York for certain moneys claimed to be due him as accrued permanent and total disability compensation."

The undisputed evidence was that the thing, and the only thing, done by defendant, was to prepare and file an action in mandamus in the Supreme Court of the District of Columbia against the Veterans' Administrator. So far as the record discloses, defendant never prepared or filed, nor has he ever assisted or rendered assistance in the preparation or filing of any paper or papers, in the Veterans' Administration. What he was employed to do and what he did was wholly different. He filed an action in mandamus in a court, in an effort to compel an administrative officer to perform a mere final action or administrative duty which the law, as defendant may well have deemed, made it obligatory on such officer to perform, as soon as that officer had found all of the facts to warrant performance and final action.

It is not at all denied, but categorically admitted in the answer filed in this mandamus suit, that on October 12, 1931,

the Veterans' Administrator had found York to have been totally and permanently disabled, and that such disability had existed for insurance purposes continuously since August 27, 1919. It is true, that prior to the filing by defendant of the action in mandamus the Veterans' Administrator had written to defendant, admitting such finding of total and permanent disability of the soldier, but drawing a distinction between such finding, as it applied to a policy of war risk insurance, and a similar finding in the matter of a rating for compensation purposes. It is also true that the Administrator in fair effect denied that the soldier was entitled to rate for compensation purposes, as totally and permanently disabled, and that after such denial the defendant filed the mandamus action.

I am of the view that section 5 of title 1 of the Act of March 20, 1933 (38 U.S.C.A. § 705), as pointed out in the opinion of Judge VAN VALKENBURGH, stood in the way of a successful outcome of the mandamus action in the situation existing when that action was begun. But this is not so far plain as that defendant can wholly without doubt be charged with bad faith, for that he deemed mandamus to be the proper remedy. He may well have taken the view that the Administrator, having found the legal and requisite disability to exist, to warrant action in one situation, was obliged to apply the like finding in the matter of compensation, and the further view that section 5 in such situation did not apply. I think the distinction drawn by the Administrator is one of law, and that mandamus in such case was forbidden by the section cited. But to me it seems that the thing was not so obvious and plain till after the case of Lynch v. United States, cited by Judge VAN VALKENBURGH, was ruled, as to warrant the charge of bad faith in what defendant did; especially since the above case was decided some six months after the action in mandamus was begun.

I think it is settled that the Supreme Court of the District of Columbia has the right to exercise practically the same broad power in the matter of actions for mandamus as is exercised by the state courts of general and original jurisdiction. 18 R.C.L. 95; Smith v. United States (C.C.A.) 57 F.(2d) 998. That a federal District Court, except in aid of its juris-

diction, has no such power, is of course settled.

Before the passage of section 5, I should have held the opinion that, when all of the facts and the law to entitle a soldier to compensation had been found in favor of the soldier, and yet, notwithstanding the Administrator capriciously, arbitrarily, and recalcitrantly refused to grant the compensation, he could have been compelled by mandamus to act and to cause such compensation to be paid. Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256; Smith v. United States, supra. Here, however, as already indicated, the Administrator was of the view that total and permanent disability for the purposes of warranting recovery on a war risk insurance policy was a different thing from such disability for the purpose of awarding compensation to the soldier. Defendant, not having the benefit of the Lynch Case, supra, took the view that in so assuming the administrator was in error. In a state court in a situation similar in principle, mandamus would have lain, and but for section 5 I think it would have lain here. The answer on the merits in the mandamus suit, after a merely formal and perfunctory objection to jurisdiction, rather clearly shows that counsel for the Administrator must have been of the opinion that mandamus would lie. So I think defendant may not be charged with an attempt to obtain an unlawful fee by resorting to evasion of the statute and subterfuge. Even a charge of ignorance is subject to some doubt, and much more a charge of bad faith, and ordinarily ignorance is not a crime.

I am not saying that the matter of bad faith has any compelling legal weight in the case; because, after all, the single question is whether the statute on which the prosecution of defendant was based applies to what was done by him. I cannot be brought to believe that it does; hence I think the motion for a finding that defendant was not guilty should have been sustained by the trial court.

No criminal statute should be so distorted by the construction put upon it by prosecuting attorneys as to be made to apply to acts not within its plain terms. This, as to a criminal statute, has been said so often by the courts as to render reiteration trite. No citizen will be protected against trouble and dishonor, if it shall become

the law here, as it is now in at least one dictator-ridden country, that in cases not punishable under the Penal Code punishment, if deemed deserved, shall be inflicted "according to the underlying idea of a Penal Code or according to healthy public sentiment."

It was for a time somewhat in doubt whether a statute fixing a fee for legal services was not constitutionally invalid, for that it was an interference with what had long been deemed the free right to make a contract. Calhoun v. Massie, 253 U.S. 170, 40 S.Ct. 474, 64 L.Ed. 843. This is another reason, in addition to the fact that the statute is highly penal, for construing the statute narrowly and for not extending it by construction beyond its rather plain terms.

So I concur in reversing this case on the single simple ground that what the defendant did was not covered by the statute on which he was prosecuted and convicted.